IN RE THE ESTATE OF CANDICE LEIGH LUNSFORD, Deceased

No. 362A01-3

(Filed 7 April 2005)

## 1. Intestate Succession— willful abandonment of child— findings sufficient

The trial court's findings of fact amply supported its conclusion that a father wilfully abandoned his child within the meaning of N.C.G.S. § 31A-2, and therefore could not inherit from her estate, where the parents were divorced while the child was an infant, the husband admitted that he had been alcoholic and immature, he seldom visited his daughter (perhaps eleven times from 1982 to 1995, coinciding with lulls·in his alcoholism), he provided less than $100 in support (although the mother refused his offers of more), but he had attended his daughter's high school graduation shortly before her death and made plans with her to further their relationship. A child's needs are constant and a parent's duties cannot be discharged on an intermittent basis. Moreover, "care and maintenance" as used in the statute represents a single, indivisible concept and the argument that a parent may inherit if he abandons maintenance but not care is rejected.

## 2. Intestate Succession— abandonment of child—exception for court order—not applicable

A divorced father seeking to inherit from his daughter's estate did not qualify for the N.C.G.S. § 31A-2(2) exception to the prohibition on inheritance by parents who abandon their children. That exception applies to those who are deprived of custody by court order and who substantially comply with support orders; here, the divorce decree did not order that support be

paid and the failure to provide an adequate level of care and support did not result from compliance with that order.

Justice NEWBY did not participate in the consideration or decision of this case.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 160 N.C. App. 125, 585 S.E.2d 245 (2003), reversing a judgment entered 16 April 2002 by Judge L. Todd Burke in Superior Court, Surry County. On 5 February 2004, the Supreme Court granted appellant's petition for discretionary review as to additional issues. Heard in the Supreme Court 14 September 2004.

*Royster and Royster, by Stephen G. Royster and Michael D. Beal, for petitioner-appellant.*

*Law Offices of Jonathan S. Dills, P.A., by Jonathan S. Dills and Daniel B. Anthony, for respondent-appellee.*

MARTIN, Justice.

This appeal concerns the distribution of the estate of Candice Leigh Lunsford (Candice), who died intestate in an automobile accident on 30 June 1999, just nine days after her eighteenth birthday. Petitioner Dawn Collins Bean (Bean), Candice's mother and the administratrix of her estate, contends that Candice's father, respondent Randy Keith Lunsford (Lunsford), wilfully abandoned Candice during Candice's infancy and thus is not entitled to share in her estate under N.C.G.S. § 31A-2 (2003). Lunsford claims that he did not abandon his daughter and that even if he did, he is still entitled to inherit from Candice because he was "deprived of the custody" of Candice by a court of competent jurisdiction and has "substantially complied with all orders of the court requiring contribution to the support of the child" under the meaning of N.C.G.S. § 31A-2(2).

Bean (then named Dawn Collins) and Lunsford were married on 1 November 1980, and Candice was born on 21 June 1981. The couple separated on 20 November 1982. On 30 January 1985, a Forsyth County district court entered a decree of absolute divorce dissolving the bonds of matrimony between Bean and Lunsford and awarding Bean sole "care, custody and control" of Candice. On 30 June 1999, Candice died intestate in an automobile accident. Bean was named administratrix of the estate. Pursuant to a wrongful death claim filed

on behalf of Candice, the proceeds of a $100,000.00 liability insurance policy were tendered to her estate.

On 31 August 1999, Candice's estate sought a hearing before the Clerk of Superior Court of Surry County to determine if Lunsford was legally entitled to share in the distribution of the estate. After hearing and considering the evidence presented, the Clerk concluded that Lunsford was precluded from inheriting from Candice under N.C.G.S. § 31A-2 on the ground that he had wilfully abandoned Candice during her minority.

Lunsford appealed for a trial *de novo* in Superior Court, which conducted its own evidentiary hearing. Among the evidence introduced at the hearing was Lunsford's admission that he was a diagnosed alcoholic who "got in some trouble" and "[w]asn't ready to grow up" at the time he married Bean. Bean testified that Lunsford visited Candice "[n]o more than four or five times" between November 1982 and March 1985, "no[t] at all" between March 1985 and 1990 and "[m]aybe five or six times" between 1990 and 1999. She also testified that Lunsford paid her under $100.00 in support over the course of Candice's entire life. The trial court reached the same conclusion as the Clerk of Superior Court in an order filed 3 March 2000.

On appeal, the Court of Appeals affirmed, with Chief Judge Eagles dissenting on the ground that N.C.G.S. § 31A-2 should not apply because Candice was not a minor at the time of her death.[1] *In re Estate of Lunsford*, 143 N.C. App. 646, 547 S.E.2d 483 (2001). On further appeal to this Court, we vacated and remanded for further remand to the trial court for additional findings as to whether Lunsford abandoned Candice and, if so, whether Lunsford "resumed care and maintenance" of Candice at least one year prior to her death or substantially complied "with all orders of the trial court requiring contribution to the support of the child." *In re Estate of Lunsford*, 354 N.C. 571, 571, 556 S.E.2d 292, 292 (2001).

On remand, the trial court conducted an in-chambers hearing during which the parties stipulated that the court would make additional findings of fact based solely on the transcript recorded at the

---

1. Subsequent to Lunsford's first appeal, this Court held in *McKinney v. Richitelli* that N.C.G.S. § 31A-2 precludes an abandoning parent from inheriting from a child of any age, provided the child was initially abandoned during his or her infancy and neither statutory exception applied to the facts at hand. *McKinney v. Richitelli*, 357 N.C. 483, 586 S.E.2d 258 (2003).

prior evidentiary hearing. In compliance with this Court's order, the trial court made the following findings of fact relevant to Lunsford's care and maintenance of Candice:

3. Bean and Lunsford separated from each other [o]n November 20, 1982.

4. Lunsford was an alcoholic and too immature for responsibilities of family life and Bean did not want Lunsford to remain in the same household with their little daughter, [Candice].

5. Lunsford agreed with Bean and honored Bean's request to leave.

. . . .

11. Bean subsequently married Gary Bean (hereinafter "Gary") on March 30, 1985.

12. From the date of separation of Bean and Lunsford, Lunsford visited with [Candice] sporadically on his own initiative.

13. Sometimes, . . . Lunsford's mother, who had an established relationship with [Candice], occasionally picked up her granddaughter for a visit, and . . . Lunsford would occasionally spend time with his daughter then.

14. As [Candice] grew older, either [Candice] or Lunsford would initiate phone calls, visits, or other relational contact.

15. These limited visits between [Candice] and Lunsford usually coincided with lulls in [Lunsford's] alcoholism and/or an increase in the emotional stability of his private life.

16. Just before [Candice's] untimely death, Lunsford attended [Candice's] high school graduation and both had initiated plans for furthering their father-daughter relationship.

17. Throughout [Candice's] minority, Lunsford occasionally offered to pay Bean for some of the care and maintenance of [Candice]. However, Bean refused all such offers.

18. At one point, after one such request, Bean did suggest Lunsford buy [Candice] some clothes [Candice] wanted, to which Lunsford readily complied.

19. However, since the marriage of Bean to Gary, Gary has assisted Bean with the support of [Candice]; and they almost exclusively paid for [Candice's] necessaries.

Based on these findings, the trial court concluded that Lunsford had wilfully abandoned Candice under the meaning of N.C.G.S. § 31A-2 and that neither of the two exceptions to N.C.G.S. § 31A-2 applied. Accordingly, the trial court entered an order on 16 April 2002 stating that Lunsford was barred from sharing in the proceeds of Candice's estate.

On appeal from the 16 April 2002 order, the Court of Appeals reversed, holding that Lunsford did not wilfully abandon Candice and was therefore not precluded from inheriting from her under N.C.G.S. § 31A-2. *In re Estate of Lunsford*, 160 N.C. App. 125, 126, 585 S.E.2d 245, 247 (2003) (*Lunsford II*). The Court of Appeals further stated that even if Lunsford had wilfully abandoned Candice, he was nevertheless entitled to inherit under the second of the two statutory exceptions to N.C.G.S. § 31A-2, which provides that an abandoning parent may inherit from the abandoned child if the parent " 'has been deprived of the custody of his or her child under an order of a court of competent jurisdiction and the parent has substantially complied with all orders of the court requiring contribution to the support of the child.' " *Id.* at 132-34, 585 S.E.2d at 250-51 (quoting N.C.G.S. § 31A-2(2)). Judge Bryant dissented, *id.* at 134-37, 585 S.E.2d at 251-53, and Candice's estate filed a notice of appeal based on the dissent. This Court subsequently allowed Bean's petition for discretionary review as to the additional issue of whether Lunsford falls within the scope of the second of the two statutory exceptions to N.C.G.S. § 31A-2. *In re Estate of Lunsford*, 358 N.C. 154, 592 S.E.2d 556 (2004). The two issues currently before this Court are therefore (1) whether Lunsford wilfully abandoned Candice under the meaning of N.C.G.S. § 31A-2 and (2) if so, whether Lunsford is nonetheless entitled to inherit from Candice because he was "deprived of the custody" of Candice by the 1985 divorce judgment and "has substantially complied with all orders of the court requiring contribution to the support of the child." N.C.G.S. § 31A-2(2).

I.

Under the Intestate Succession Act, a parent may inherit from a deceased child if the child dies without a surviving spouse or lineal descendants. N.C.G.S. § 29-15(3) (2003). If both parents survive the child under such circumstances, the child's estate is divided equally between them. *Id.* Under N.C.G.S. § 31A-2, however, a parent who has "wilfully abandoned the care and maintenance of his or her child" is barred from inheriting any portion of the child's estate unless the parent meets one of two statutory exceptions. N.C.G.S. § 31A-2.

IN RE ESTATE OF LUNSFORD

[359 N.C. 382 (2005)]

Specifically, an abandoning parent may still inherit if (1) "the abandoning parent resumed its care and maintenance at least one year prior to the death of the child and continued the same until its death," or (2) "[the] parent has been deprived of the custody of his or her child under an order of a court of competent jurisdiction and the parent has substantially complied with all orders of the court requiring contribution to the support of the child." N.C.G.S. § 31A-2(1), (2). Our wrongful death statute mandates that wrongful death proceeds be distributed "as provided in the Intestate Succession Act," and they are therefore subject to N.C.G.S. § 31A-2. N.C.G.S. § 28A-18-2(a) (2003); *Williford v. Williford*, 288 N.C. 506, 508-09, 219 S.E.2d 220, 222 (1975).

[1] We first address whether the Court of Appeals erred in reversing the trial court's determination that Lunsford wilfully abandoned the care and maintenance of Candice under the meaning of N.C.G.S. § 31A-2. Because neither party has assigned error to the trial court's findings of fact, our review is limited to Lunsford's contention that the trial court's findings of fact do not support its conclusion of law. *See* N.C. R. App. P. 10(a); *see also Stephenson v. Bartlett*, 357 N.C. 301, 309, 582 S.E.2d 247, 252 (2003); *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

For purposes of the Intestate Succession Act, parental abandonment has been defined as " 'wil[l]ful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child.' " *McKinney*, 357 N.C. at 489, 586 S.E.2d at 263 (quoting *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962)) (alteration in original). If a parent " 'withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance,' " such parent is deemed to have relinquished all parental claims and to have abandoned the child. *Id.* at 489-90, 586 S.E.2d at 263 (alteration in original) (quoting *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608). Abandonment has also been defined as " 'wil[l]ful neglect and refusal to perform the natural and legal obligations of parental care and support.' " *Id.* at 489, 586 S.E.2d at 263 (alteration in original) (quoting *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608). "Wilful intent is an integral part of abandonment and this is a question of fact to be determined from the evidence." *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608.

In the instant case, the trial court's findings of fact support its conclusion that Lunsford wilfully abandoned the care and mainte-

**IN RE ESTATE OF LUNSFORD**

[359 N.C. 382 (2005)]

nance of Candice under the meaning of N.C.G.S. § 31A-2. Even assuming that Candice refused to accept Lunsford's occasional offers of financial assistance, the trial court could reasonably have concluded that Lunsford's sporadic contacts with his daughter over a seventeen-year period failed to reflect the degree of "presence," "love," "care," and "opportunity to display filial affection" that defines non-abandoning parents. *McKinney*, 357 N.C. at 489-90, 586 S.E.2d at 263.

*In re Young*, 346 N.C. 244, 485 S.E.2d 612 (1997), an appeal arising out of an action to terminate parental rights, is relevant to this discussion. In *Young*, we held that a non-custodial mother who had only limited contact with her child over a period of six months had not abandoned her child. *Id.* at 251-52, 485 S.E.2d at 616-17. *Young*, however, is factually and procedurally distinguishable from the instant case.

First, the record in *Young* indicated that members of the father's family who were caring for the child during the six-month period at issue had a hostile relationship with the non-custodial mother and that, for at least part of this time, the mother may not have known the location of her child. *Id.* In addition, the record included testimony regarding the mother's surgical treatment for breast cancer during the period of alleged abandonment, including testimony that she asked to see the child before her surgery and that the child's father denied this request. *Id.* In the present case, by contrast, Lunsford admittedly had only sporadic contacts with Candice over the last seventeen years of her life, as opposed to a mere six months, and the major factors preventing Lunsford from participating more fully in his daughter's life were his own alcoholism and immaturity.

Moreover, the issue of abandonment in *Young* arose not from a dispute over inheritance rights, but in the context of an action to terminate parental rights. Thus, the father's burden of proof to show that the mother abandoned her child was not the "preponderance of the evidence" standard applicable in most civil actions, *see, e.g., Wyatt v. Queen City Coach Co.*, 229 N.C. 340, 342, 49 S.E.2d 650, 652 (1948), but the heightened evidentiary standard of "clear, cogent, and convincing evidence," *Young*, 346 N.C. at 247, 485 S.E.2d at 614 (citing N.C.G.S. § 7A-289.30(d), (e) (1995)). Thus, *Young* does not control our resolution of the present action.

In his brief, Lunsford argues that while the facts found by the trial court may support a conclusion that he provided little towards the

*maintenance* of Candice, they do not support a conclusion that he intended to abandon her *care*. Because N.C.G.S. § 31A-2 mandates that a parent who abandons the "care *and* maintenance" of a child loses the right to inherit from that child, Lunsford contends, the abandonment of either "care" or "maintenance" alone is insufficient to trigger the statute. N.C.G.S. § 31A-2 (emphasis added).

In support of his argument, Lunsford cites our decision in *McKinney*, where we held that a parent must "resume both the 'care *and* maintenance' of the child" to fall within the first exception to section 31A-2. *McKinney*, 357 N.C. at 491, 586 S.E.2d at 264 (quoting N.C.G.S. § 31A-2(1)). Admittedly, *McKinney* describes the duty of "care" as pertaining primarily to "love and concern for the child," and the duty to provide "maintenance" as referring more specifically to the "financial support of a child during minority." *Id.* A broader view of our cases, however, suggests that these parental duties are interrelated components of a parent's overall responsibilities for his or her minor children. *See, e.g., Price v. Howard*, 346 N.C. 68, 76, 484 S.E.2d 528, 533 (1997) (stating that the " 'custody, care and nurture of the child reside first in the parents' " (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166, 88 L. Ed. 645, 652 (1944))); *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608 (referring to the parental duties of "love," "care," "affection," "support," and "maintenance"); *Wells v. Wells*, 227 N.C. 614, 618, 44 S.E.2d 31, 34 (1947) (" '[P]arents are, regardless of any statute, under a legal as well as a moral duty to support, maintain, and care for their minor children.' " (citation omitted)). Thus, we do not read *McKinney* to suggest that the duties of "care" and "maintenance" are distinct and severable for purposes of the definition of abandonment in section 31A-2.

The decision of the Court of Appeals in *Davis v. MacMillan* bolsters this conclusion. *See Davis v. MacMillan*, 148 N.C. App. 248, 558 S.E.2d 210, *disc. rev. denied*, 355 N.C. 490, 563 S.E.2d 564 (2002). *Davis* construed N.C.G.S. § 97-40, a statute which prohibits the distribution of workers' compensation death benefits to "a parent who has willfully abandoned the care and maintenance of his or her child." *Id.* at 253, 558 S.E.2d at 214 (quoting N.C.G.S. § 97-40 (1987)). In *Davis*, the plaintiff argued that he was entitled to receive such benefits even if he had abandoned the "care" of his minor child prior to the child's death because he continued to pay child support and thus did not abandon the child's "maintenance." *Id.* at 252-53, 558 S.E.2d at 213-14. The Court of Appeals rejected this argument, holding that "the words 'care and maintenance' are not to be read separately but

instead combined to define a parent's overall responsibilities." *Id.* at 253, 558 S.E.2d at 214. In support of this construction, the Court of Appeals looked to the phrasing of the exception in N.C.G.S. § 97-40, which provides that an abandoning parent may receive workers' compensation benefits if the parent " 'resumed [his or her] care and maintenance' " and continued the same for at least one year until the child's death or majority. *Id.* (quoting N.C.G.S. § 97-40). The Court of Appeals reasoned that if the abandonment of two independent duties were required to bar a parent from sharing in workers' compensation death benefits, "the renewed assumption of *either* care or maintenance" for a year prior to the child's death or majority "would necessarily rehabilitate the parent." *Id.* (emphasis added). Thus, the Court of Appeals concluded, the fact that the same "care and maintenance" language was employed in both parts of the statute demonstrates that "the words are indivisible, representing a single concept." *Id.*

We believe this reasoning is persuasive and applicable to the case at bar. The operative language in N.C.G.S. § 31A-2 is nearly identical to that in N.C.G.S. § 97-40. Both statutes provide that a parent who has abandoned the "care and maintenance" of a child loses the right to receive a specified benefit upon the child's death. And both provide an exception when the parent has resumed the "care and maintenance" of the child at least one year prior to the child's death or majority. Accordingly, we reject Lunsford's argument that a parent is not precluded from inheriting under N.C.G.S. § 31A-2 if that parent abandons the "maintenance" but not the "care" of his or her child.

Lunsford next argues that under the *Pratt* definition of abandonment, even sporadic and occasional contacts with a child foreclose a determination that a parent possessed "a settled purpose to forego all parental duties and relinquish all parental claims to the child." *McKinney,* 357 N.C. at 489, 586 S.E.2d at 263 (quoting *Pratt,* 257 N.C. at 501, 126 S.E.2d at 608). According to Lunsford, abandonment requires "the cessation of meaningful relations, obstinate refusal and outright neglect of legal obligations," and a parent who has made "some effort" to care or provide for the child cannot be said to have abandoned that child.

Such a definition appears nowhere in our case law and overstates the threshold for abandonment as defined in *Pratt.* Indeed, *Pratt* expressly held that abandonment requires neither continuous absence nor an utter lack of concern on the part of the abandoning

parent. *Pratt*, 257 N.C. at 503, 126 S.E.2d at 609. As explained in *Pratt*, a child's physical and emotional needs are constant, and a parent's duties to care for and maintain a child cannot be discharged on an *ad hoc*, intermittent basis. *Id.* at 502, 126 S.E.2d at 608-09. Thus, the fact that Lunsford and Candice had "some relationship" during lulls in Lunsford's alcoholism and had formulated plans to develop their relationship does not foreclose a determination of abandonment. Abandonment is not an " 'ambulatory thing the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child.' " *Id.* at 502, 126 S.E.2d at 609 (quoting *In re Adoption of Bair*, 393 Pa. 296, 307, 141 A.2d 873, 879 (1958) (citation omitted)).

Thus, the trial court's findings of fact amply support its conclusion that Lunsford wilfully abandoned Candice within the meaning of N.C.G.S. § 31A-2.

II.

**[2]** We next address whether Lunsford falls within the second statutory exception to N.C.G.S. § 31A-2. This exception applies when an abandoning parent (1) "has been deprived of the custody of his or her child under an order of a court of competent jurisdiction" and (2) "has substantially complied with all orders of the court requiring contribution to the support of the child." N.C.G.S. § 31A-2(2).

In the instant case, the trial court determined on remand that N.C.G.S. § 31A-2(2) was inapplicable because Lunsford failed to meet the requirements of the second prong of the exception. The trial court found that the 1985 divorce decree "considered the issue of child support" but "made no order whether child support was to be paid by either parent." Reasoning that Lunsford could not substantially comply with all orders "requiring contribution" to the support of his child because "no order to pay child support was issued," the trial court concluded that the statutory exception was inapplicable to the instant facts. The Court of Appeals reversed, stating that because the district court "considered" the issue of child support, Lunsford "complied with the only order in existence addressing the question of child support" and thus fell within the scope of the exception. *Lunsford II*, 160 N.C. App. at 134, 585 S.E.2d at 251.

It is well settled that "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning."

*Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). Here, N.C.G.S. § 31A-2(2) provides that an abandoning parent may inherit from an abandoned child if the parent has "substantially complied with all orders of the court *requiring contribution* to the support of the child." N.C.G.S. § 31A-2(2) (emphasis added). By its express language, therefore, the statutory exception may not be invoked where a court order has not "requir[ed]" the payment of child support.

Our construction of the statute is consistent with the intent of the legislature in enacting N.C.G.S. § 31A-2. The primary rule of statutory construction is to effectuate the intent of the legislature. *Quick v. United Benefit Life Ins. Co.*, 287 N.C. 47, 56, 213 S.E.2d 563, 569 (1975); *Buck v. United States Fid. & Guar. Co.*, 265 N.C. 285, 290, 144 S.E.2d 34, 37 (1965). In *McKinney*, this Court examined the common law background and legislative history of N.C.G.S. § 31A-2 and concluded that "the legislative intent behind N.C.G.S. § 31A-2 was both to discourage parents from shirking their responsibility of support to their children and to prevent an abandoning parent from reaping an undeserved bonanza." *McKinney*, 357 N.C. at 489, 586 S.E.2d at 263. We also stated that the General Assembly had demonstrated its "unwillingness to allow an abandoning parent to take from an abandoned adult child as the result of a mechanical application of the rules of intestate succession." *Id.* at 492, 586 S.E.2d at 265.

In analyzing the legislative intent behind the N.C.G.S. § 31A-2(2) exception, the Court of Appeals reached the eminently reasonable conclusion that "[t]he exception essentially states that . . . a parent should not be denied the right to participate in intestate succession if he limits his role in his child's life to the parameters set out by a court." *Lunsford II*, 160 N.C. App. at 133, 585 S.E.2d at 251. We agree, at least when the abandoning parent complies with the express terms of a court order *requiring* contribution to the support of the child. An exception to the general rule of disinheritance is justified under such circumstances, because the legislative intent underlying section 31A-2 is not effectuated by the disinheritance of a non-custodial parent who provides the court-ordered level of material support. Put simply, a parent who "limits his role in his child's life to the parameters set out by a court" has not "shirk[ed] [his] responsibility" to that child. Thus, our construction of N.C.G.S. § 31A-2(2) effectuates the legislative intent behind that exception.

We acknowledge that it would be inequitable to permit a parent who has complied with a child support order to inherit, while disin-

heriting a parent who has voluntarily supplied the same degree of support. *Cf. Wells*, 227 N.C. at 618, 44 S.E.2d at 34 (noting that " 'parents are, regardless of any statute, under a legal as well as a moral duty to support, maintain, and care for their minor children' " (citation omitted)). We do not believe, however, that N.C.G.S. § 31A-2 would support such an incongruous result. If a parent voluntarily provides adequate "care and maintenance" for purposes of N.C.G.S. § 31A-2, that parent cannot be said to have abandoned the child in the first instance. As an exception to the general rule of disinheritance, N.C.G.S. § 31A-2(2) comes into play only when a parent has *failed* to provide care and support of his or her own volition. As the Court of Appeals correctly noted, the exception provides that a parent should not be penalized for his or her failure to exceed the terms of a judicial child support order. *Lunsford II*, 160 N.C. App. at 133, 585 S.E.2d at 251. Accordingly, the statute should not be applied to the disadvantage of a parent who voluntarily provides adequate care and support. Such a parent can hardly be deemed in law to have abandoned his or her child.

Applying these principles to the case at bar, Lunsford is subject . to disinheritance and does not qualify to inherit from his deceased child under the statutory exception. Lunsford did not voluntarily provide Candice with an adequate level of care and support and therefore abandoned the child under N.C.G.S. § 31A-2. Because he did not comply with the terms of a court order requiring support to be paid, Lunsford may not invoke the N.C.G.S. § 31A-2(2) exception.

In conclusion, the trial court's findings of fact provide ample support for its conclusion of law that Lunsford wilfully abandoned Candice under the meaning of N.C.G.S. § 31A-2, and neither of the statutory exceptions to section 31A-2 applies to the instant case. Lunsford is not entitled to share in any part of Candice's estate. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.

Justice NEWBY did not participate in the consideration or decision of this case.